IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-700-D-KS

| | |
|---|---|
| DENNIS DARDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MARTIN O'MALLEY, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned recommends the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB and SSI on September 24, 2021, with an alleged disability onset date of April 6, 2021. (R. 44, 248–56.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 44, 91, 92,

111–12, 160–61.) A hearing was held on May 1, 2023, before Administrative Law Judge ("ALJ") Anne-Marie Ofori-Acquaah, who issued an unfavorable ruling on June 5, 2023. (R. 41–90.) On October 16, 2023, the Appeals Council denied Plaintiff's request for review. (R. 2–5.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On December 7, 2023, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and

second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and

3

denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2026. (R. 46.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 6, 2021, the alleged onset date. (R. 46.) Next, the ALJ determined Plaintiff has the severe impairments of chronic ischemic heart disease, essential hypertension, obesity, sleep apnea, and blindness, right eye. (R. 46.)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 48.) The ALJ expressly considered Listings 2.02, 2.04, 3.09, 4.00(H)(1), 4.02, 4.04, and Plaintiff's obesity pursuant to SSR 19–2p. (R. 48–49.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. [Plaintiff] can frequently stoop, kneel, crouch and crawl. [Plaintiff] cannot perform jobs that require depth perception. [Plaintiff] must avoid exposure to unprotected heights and moving mechanical parts.

4

(R. 49.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other"), based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 49–51.)

At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 54.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: silver wrapper (DOT #318.687-101),[1] agricultural produce sorter (DOT #529.687-186), and marker (DOT #209.587-034). (R. 54–55.) The ALJ concluded that Plaintiff has not been disabled under the Act from April 6, 2021, the alleged onset date, through the date of the decision. (R. 54–55.)

## IV. Plaintiff's Arguments

Plaintiff makes four arguments on review:

---

[1] Silver wrapper is one of thirteen DOT occupations that now requires "heightened evidentiary [findings] and articulation" "to support a framework 'not disabled' determination or decision." *See* SSA, EM-24027, https://secure.ssa.gov/apps10/reference.nsf/links/06212024022159PM (June 22, 2024) (requiring additional vocational evidence concerning manner in which jobs are performed and availability of jobs in national workforce for specified DOT occupations). The undersigned does not address the new policy as Plaintiff has not raised this argument. Moreover, the ALJ found Plaintiff able to perform two other jobs that are not subject to the heightened standard and which the ALJ found to exist in significant numbers in the national economy.

5

(A) the ALJ failed to properly assess Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his cardiac impairment (Pl.'s Br. [DE #12] at 13–17);

(B) the ALJ's consideration of Dr. Brubeck's medical opinion was not supported by substantial evidence (*id.* at 17–21);

(C) the ALJ applied the incorrect legal standard when evaluating a third-party function report (*id.* at 22–25); and

(D) the ALJ's errors impacted her RFC assessment and led to an inaccurate finding of "not disabled" at step five (*id.* at 25–26).

The Commissioner argues the ALJ's decision correctly applied relevant law and regulations and is supported by substantial evidence. For the reasons explained below, the undersigned agrees with Plaintiff as to argument (A) and thus recommends remand.

A. Symptom Evaluation

A symptom evaluation requires two steps: "[f]irst, the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to cause the claimant's alleged symptoms," and then second, "the ALJ must assess the intensity and persistence of the alleged symptoms." *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529 and SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016)). This two-step process was "born out of a long history of disagreements" between the Fourth Circuit and the Commissioner regarding how to evaluate a claimant's subjective complaints of pain. *Arakas*, 983 F.3d at 95. A claimant is "entitled to rely exclusively on subjective evidence" to prove that his symptoms are so severe that they prevent him from

working a full day. *Id.* at 95–96 (quoting *Hines v. Barnhart*, 453 F.3d 559, 563–65 (4th Cir. 2006)). *See also Oakes v. Kijakazi*, 70 F.4th 207, 215–17 (4th Cir. 2023).

Plaintiff takes issue with the ALJ's consideration of his symptoms related to his cardiac impairment. (Pl.'s Br. at 13.) The ALJ determined that Plaintiff has an underlying cardiac impairment which could reasonably be expected to cause the alleged symptoms. (R. 46, 51.) However, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms not entirely consistent with the record. (R. 51.) Specifically, the ALJ found that: (i) Plaintiff has been "doing well overall" since his heart surgery, with some complaints related to his cardiac impairment; (ii) Plaintiff's coronary artery disease and blood pressure are under control; and (iii) Plaintiff reported walking two to three times per week for an hour at a time in March 2023. (R. 52.)

Plaintiff argues the ALJ focused only on indications that Plaintiff was doing well and inappropriately relied on evidence that Plaintiff could walk for an hour several times a week. (Pl.'s Br. at 13–17; Reply Br. [DE #17] at 2–6.) The Commissioner responds that the ALJ need not discuss "every possible permutation of the evidence." (Comm'r's Br. [DE #15] at 12) (quoting *Turner v. Comm'r of SSA*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) (per curiam)). The Commissioner argues the ALJ adequately considered both ongoing and improved symptoms and did not overstate Plaintiff's abilities related to walking. (Comm'r's Br. at 11–12.)

7

The undersigned finds Plaintiff's first point lacks merit as the ALJ considered Plaintiff's "complaints of fatigue, shortness of breath and palpitations" when making her findings about Plaintiff's credibility. (R. 52.) Thus, the ALJ acknowledged evidence beyond Plaintiff "doing well." Plaintiff takes issue with how the ALJ weighed such evidence. Finding error with this aspect of the ALJ's decision would require the court to re-weigh evidence and make its own credibility determinations, which this court is not to do. *Mastro*, 270 F.3d at 176.

There is merit to Plaintiff's second point. The ALJ noted Plaintiff's report of walking a few times per week for an hour. (R. 52 (citing R. 1211 but with actual reference on R. 1209).) An ALJ may consider daily activities when evaluating symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). While the Commissioner is correct that an ALJ need not discuss every permutation of evidence, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [he] can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (citing *Brown v. Comm'r SSA*, 873 F.3d 251, 263 (4th Cir. 2017)).

While ALJ Ofori-Acquaah cited one instance of Plaintiff's ability to walk, she failed to reconcile this with evidence in the record of numerous instances of Plaintiff's walking limitations, including that Plaintiff needs to rest after walking or exerting himself for short periods of time. (R. 77, 79, 96, 100.) The ALJ made no mention of these breaks and thus failed to consider the extent to which Plaintiff can perform daily activities or how his limitations might affect his ability to work eight hours per day over a full week of work. *See Oakes*, 70 F.4th at 216 (ALJ failed to consider how

8

plaintiff's need to take necessary breaks impacted the extent to which he could perform daily activities for the purpose of his RFC); *Langston v. Comm'r of SSA*, No. 22-1257, 2023 WL 1519521, at *4 (4th Cir. Feb. 3, 2023) (per curiam) (holding that an ALJ erred by failing to consider a plaintiff's "qualifying statements" about her daily activities or how her limitations would impact her ability to persist through a workday).

Moreover, the ALJ failed to address additional testimony about Plaintiff's daily activities, specifically his limitations on showering, bringing in groceries, and sweeping. (R. 78–79.) The only daily activity the ALJ mentioned in making her RFC finding was Plaintiff's single reference to walking for an hour, several days a week. (R. 51–52.) This failure to account for testimony coupled with the failure to consider Plaintiff's qualifying statements about his daily activities precludes meaningful review. The ALJ failed to "'build an accurate and logical bridge' from the evidence to [her] conclusion." *Arakas*, 983 F.3d at 100 (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). Thus, remand is recommended.

### B. Medical Opinion Analysis

When evaluating medical opinions, the ALJ must consider factors set forth in 20 C.F.R. §§ 404.1520c(b), (c)(1)–(5); 416.920c(b), (c)(1)–(5). "The ALJ is not required to explain how she considered each of the relevant factors; instead, when articulating her finding about whether an opinion is persuasive, the ALJ need only explain how she considered 'the most important factors' of supportability and consistency." *Corbin v. Kijakazi*, No. 2:20-CV-60-M, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022)

(quoting 20 C.F.R. § 404.1520c(b)(2)). Generally, the ALJ must explain how the evidence led to her conclusions. *Arakas*, 983 F.3d at 95; *see also Mascio*, 780 F.3d at 637 (remand necessary when a reviewing court is "left to guess about how the ALJ arrived at [her] conclusions").

When the evidence available to the ALJ is "incomplete, insufficient, or inconsistent," the ALJ "will determine 'the best way' to resolve the issue," which may include one or more of the options identified in 20 C.F.R. §§ 404.1520b(b)(2)(i)–(iv), 416.920b(b)(2)(i)–(iv). *Oakes,* 70 F.4th at 213 (quoting 20 C.F.R. § 404.1520b(b)(2)). One of these options is to "request additional existing evidence." 20 C.F.R. §§ 404.1520b(b)(2)(ii), 416.920b(b)(2)(ii).

Plaintiff takes issue with ALJ Ofori-Acquaah's analysis of the medical opinion of his treating provider, Dr. Brubeck, with regard to his cardiac impairment. (Pl.'s Br. at 17–21.) The ALJ's analysis of Dr. Brubeck's opinion is as follows:

> The restriction to avoid exposure to hazards such as machinery and heights is persuasive, as it is supported by and consistent with the record, including [Plaintiff's] cardiac impairment and his reported symptoms. The rest of the opinion is unpersuasive as it is not supported by or consistent with the overall record, including the treatment notes of the [Plaintiff's] cardiologist showing he was stable from a cardiology standpoint, as well as the [Plaintiff's] own statements that he was doing well with noted improvement in his palpitations, and stable blood pressure. Furthermore, except for citing the [Plaintiff's] diagnosis and reports of chest pain, Dr. Brubeck does not cite any objective signs or clinical findings to support her extreme limitations.

(R. 53.) Plaintiff argues ALJ Ofori-Acquaah should have sought to further develop the record related to his cardiac impairment. (Pl.'s Br. at 19–20.) He contends Dr. Brubeck referenced "forms and letters" that include supporting evidence about his

impairment but were not in the record. (Pl.'s Br. at 19; R. 988, 990.) Plaintiff relies on *Oakes* for the proposition that an ALJ must develop the record in accordance with 20 C.F.R. §§ 404.1520b, 416.920b if there is insufficient evidence to make a finding on disability. (Pl.'s Br. at 19–20); *see Oakes*, 70 F.4th at 214.

*Oakes* is distinguishable from Plaintiff's case. In *Oakes*, the record was notably sparse, including only two emergency room visits and an administratively ordered consultative exam. *Oakes*, 70 F.4th at 211. There were also inconsistencies within the treatment notes that could have been easily reconciled by the ALJ through further discussion with one of the medical providers. *Id.* at 214–15. Here, the medical record appears more robust than the record in *Oakes*, as it includes treatment notes from multiple physicians spanning several years. (*See, e.g.*, R. 383, 1010, 1076, 1095.) Moreover, Plaintiff does not identify any inconsistencies or ambiguities in the record that the ALJ should have clarified. (Pl.'s Br. at 19–20; Reply Br. at 7–8.) Plaintiff's mention of "forms and letters" that "reference[] evidence" does not indicate the inconsistencies that might appear in this evidence or how those inconsistencies would undermine ALJ Ofori-Acquaah's analysis. (*See* Pl's. Br. at 19–20.) Accordingly, this argument is without merit.

Plaintiff next argues that the ALJ's assessment of Dr. Brubeck's opinion as unpersuasive was not supported by substantial evidence because the ALJ relied on improvement in Plaintiff's symptoms and failed to consider the record as a whole. (Pl.'s Br. at 21; Reply Br. at 7.) In particular, Plaintiff argues that Dr. Brubeck's

11

observation of chest pain is supported by evidence in the record, specifically Plaintiff's prescription for and use of chest pain medication. (Pl.'s Br. at 21.)

The problem with this argument is that it asks the court to re-weigh evidence. *Mastro*, 270 F.3d at 176. ALJ Ofori-Acquaah did cite improvements in Plaintiff's conditions; however, she also reviewed Dr. Brubeck's assessment of Plaintiff's subjective complaints when making her findings. (R. 53.) While it may be true that there are places within the medical record that support Plaintiff's claims of chest pain, including his use of pain medication, that does not mean the ALJ's opinion was not supported by substantial evidence. Any finding otherwise would require the court to re-weigh conflicting evidence, a task reserved for the ALJ. *See Green v. Colvin,* No. 4:14-CV-212-FL, 2016 WL 487535, at *7 (E.D.N.C. Jan. 19, 2016) ("It is insufficient for the [plaintiff] to point to other record evidence and argue that the ALJ's decision is unfounded . . . as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the [ALJ]."), *M. & R. adopted by* 2016 WL 497890 (E.D.N.C. Feb. 8, 2016).

### C. Third-Party Function Report Analysis

When assessing medical opinions, an ALJ must articulate how persuasive she found the evidence. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). An ALJ is not, however, "required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

Plaintiff argues ALJ Ofori-Acquaah applied the incorrect legal standard when stating she was not required to articulate how she weighed the third-party function

12

Case 5:23-cv-00700-D-KS    Document 19    Filed 11/22/24    Page 12 of 15

report of Plaintiff's brother. (Pl.'s Br. at 22–25; R. 53–54.) This argument is based on an error in the ALJ's citation—she incorrectly cited 20 C.F.R. § 416.920b(c) as the basis for her claim that she need not articulate how she considered a nonmedical opinion (R. 53–54), when that proposition is in 20 C.F.R. §§ 404.1520c(d), 416.920c(d). The Commissioner characterizes this as "a scrivener's error," and contends that the ALJ applied the appropriate legal standard, though citing to the incorrect regulation. (Comm'r's Br. at 17.) The undersigned agrees with the Commissioner. The ALJ stated that she considered the third-party function report but "need not articulate how this evidence was considered in terms of persuasiveness." (R. 53–54.) Despite citing the incorrect regulation, the ALJ applied the correct standard for nonmedical sources articulated in 20 C.F.R. §§ 404.1520c(d), 416.920c(d). *See Grimes v. Colvin*, No. 1:14-CV-891, 2016 WL 1312031, at *10 (M.D.N.C. Mar. 31, 2016) (finding that a possible error "must be read in the context of the entire decision"). Accordingly, Plaintiff's argument is without merit.

### D. Disability Determination

Plaintiff's remaining argument depends on Plaintiff's other three arguments. Plaintiff argues that if the ALJ had not erred in her assessment of Dr. Brubeck's medical opinions, the third-party function report, and Plaintiff's own description of his symptoms, then an RFC of sedentary would have been appropriate, leading to a finding of disability. (Pl.'s Br. at 26.) While the undersigned found error in the ALJ's symptom evaluation, the undersigned will not decide how such error impacted the

disability determination, as that is a decision left for the Commissioner on remand. Accordingly, the undersigned declines to reach this argument.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that the Commissioner's decision be REVERSED and the matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **December 6, 2024**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. (May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's

14

Case 5:23-cv-00700-D-KS   Document 19   Filed 11/22/24   Page 14 of 15

failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 22nd day of November 2024.

KIMBERLY A. SWANK
United States Magistrate Judge